UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **SHANE ANTHONY JONES** | **CIVIL ACTION NO. 23-1063** |
| **VS.** | **SECTION P** |
| | **JUDGE TERRY A. DOUGHTY** |
| **MADISON CORRECTIONAL SECURITY MANAGEMENT, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Shane Anthony Jones, a prisoner at Elayn Hunt Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately July 5, 2023, under 42 U.S.C. § 1983. He names the following defendants: Madison Correctional Security Management, Nursing Staff, and three unknown nurses.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff states that when he arrived at Madison Parish Correctional Center ("MPCC") on November 20, 2022, he informed nurses that he was "diabetic with neuropathy" and needed "periodic glucose checks and possible feet inspections." [doc. # 1, p. 3]. The nurses allegedly responded, "you are not on a glucose checklist," and they informed Plaintiff that he would have to "see a doctor in order to get a regular glucose check." *Id.*

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Plaintiff alleges that "at pill call," he asked guards to tell a nurse that he was diabetic and "may need glucose checks[,]" but the guards told him to "fill out a sick call request to say anything to the nurse[.]" [doc. # 1, p. 3]. Plaintiff filed a sick call request. *Id.*

Plaintiff states that between the middle of December 2022 and the middle of February 2023, he had to consume and shower in brown water every day. [doc. # 1, p. 4]. He "started having headaches daily[.]" *Id.* He was provided Tylenol. *Id.*

Also between December 2022 and February 2023, and after Plaintiff "mentioned getting [his] glucose checked and foot inspect[ed][,]" a nurse briefly examined him and concluded that he had "no feet issues" and that his "glucose level was good." *Id.*

Around the end of January or the beginning of February 2023, Plaintiff began having pain in his feet, so on approximately February 8, 2023, he "sent in a sick-call and at every pill call [he] reminded them that [he] sent one in." [doc. #s 1, p. 4; 11, p. 1]. "By this time, [he] started noticing little spots of blood in [his] socks[.]" [doc. # 1, p. 4]. He claims that he "was never seen[.]" [doc. # 1, p. 4].

Plaintiff's pain worsened, "so at every pill-call [he] tried telling the nurse that [he] sent in multiple sick-calls[,]" and he asked when he would be seen. [doc. # 1, p. 4]. On approximately February 16, 2023, he submitted a request for care for foot pain and light bleeding. [doc. # 11, p. 1]. On approximately February 21, 2023, he submitted a request for care for foot pain, and he also submitted an "ARP." *Id.* "He was never called to the front[.]" [doc. # 1, p. 4]. On one occasion, a guard told him that a "nurse said she [does not] do sick-calls!" *Id.*

Plaintiff's pain worsened. [doc. # 1, p. 4]. He informed guards that he was bleeding, in pain, and required emergency care. *Id.*

2

On approximately February 23, 2023, a nurse examined Plaintiff and asked him why he waited so long to seek care. [doc. #s 1, p. 4; 11, p. 1]. Plaintiff responded that he had "been trying and sent in many requests without any response[.]" *Id.* The same day, nurses sent Plaintiff to an emergency room in Union Parish. *Id.*

At the emergency room, a physician and nurses inquired why Plaintiff waited "so long" to seek care. [doc. # 1, p. 4]. The physician diagnosed Plaintiff with a bacterial infection in "one toe of each foot." *Id.* Plaintiff received Tylenol for his pain. [doc. # 11, p. 1]. After "they cleaned it and wrapped it up[,]" Plaintiff returned to the jail. *Id.* "[A]t pill-call," he asked the nurse if she would be re-wrapping his feet, and the nurse responded, "We don't do any of that here." *Id.*

On February 24, 2023, Plaintiff was transferred to Tangipahoa Parish Jail. [doc. # 1, p. 5]. There, nurses examined his feet, and the next day he was admitted to an emergency room and provided medications for his infections. *Id.* On March 9, 2023, two of his toes were amputated. *Id.* His stiches from the amputations were removed on approximately May 15, 2023. *Id.* As of July 2023, Plaintiff continued suffering from pain. *Id.*

Plaintiff writes, "I really feel that the nurses at [MPCC] violated my medical rights to be seen as needed . . . ." [doc. # 1, p. 5]. He "feels like it was medical-negligence[] because [he] sent in 3 medical sick-calls and an ARP[.]" *Id.* He maintains, "I did not deserve losing 2 of my toes because the nursing staff was having a bad day!" *Id.* In an amended pleading, Plaintiff claims: "The bottom-line is I gave my medical requests seeking all medical attention needed, but the 'staff' or whoever handles these procedures decided not to help me. I gave it to the 'Nursing Staff' and that is who should be held accountable!" [doc. # 11, p. 1].

Plaintiff seeks $20,000,000.00 in compensation. [doc. # 1, p. 6].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926

5

F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Nursing Staff as a Single Entity**

Plaintiff appears to only seek relief from "Nursing Staff," alleging: "The bottom-line is I gave my medical requests seeking all medical attention needed, but the 'staff' or whoever handles these procedures decided not to help me. I gave it to the 'Nursing Staff' and that is who should be held accountable!" [doc. # 11, p. 1].

Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is an "entity to which the law attributes personality, such as a corporation or a partnership." LA. CIV. CODE art. 24.

Here, the Court should dismiss Plaintiff's claims against Nursing Staff because Nursing Staff does not qualify as a juridical person. *See Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . ."); *see also Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002).

### 3. Nursing Staff as Unidentified Persons

Even assuming that by "Nursing Staff" Plaintiff refers not to a singular entity but to unidentified nurses, he does not state a plausible claim because he does not sufficiently address how these unidentified nurses were personally involved in depriving him of a constitutional right.

As above, a complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Further, Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Here, the undersigned instructed Plaintiff to "provide a separate description of what, exactly, each defendant did to violate his rights[.]" [doc. # 10, p. 3]. Plaintiff filed an amended pleading on approximately November 20, 2023, but he did not sufficiently identify any particular nurse's "personal involvement in conduct that caused constitutional deprivation." *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to correctly house the plaintiff because despite the magistrate judge's

instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant).

On March 28, 2024, the undersigned again instructed Plaintiff to file an amended complaint and, if possible, "identify who (if anyone) he blames for failing to provide medical care from approximately February 8, 2023, to February 23, 2023, *and* specify what each defendant he identifies did (or failed to do) to violate his constitutional right to medical care." [3] [doc. # 15 (some emphasis removed)]. Plaintiff did not respond.

Plaintiff does describe three nurses with whom he interacted, saw, or "dealt with[.]" However, he does not claim that the three nurses were responsible for denying, delaying, ignoring, or otherwise impeding his requests for medical care. [doc. # 11, p. 1]. He alleges that after he submitted requests for care, he "was not seen to prevent amputations" and "was NOT called to the front to be checked out." [doc. # 11, p. 1]. But he does not claim that any of the three nurses failed to "call" him "to the front to be checked out." *Id.* Instead, Plaintiff suggests that he does not know who delayed his medical care: "[T]he 'Staff' or whoever . . . decided not to help me. I gave it to the 'Nursing Staff' and that is who should be held accountable."[4] *Id.* Consequently, he does not supply enough information to permit the Court "to draw the reasonable inference that [the described nurses] [are] liable for the misconduct alleged." *See*

---

[3] The undersigned added: "'Staff' and 'nursing staff' are not proper defendants. If Plaintiff does not identify specific individual defendants (as opposed to groups of defendants) he blames for failing to respond to his requests for medical care and specify what exactly each defendant did to violate his right to medical care, the Court intends to recommend dismissal of Plaintiff's claims." [doc. # 15].

[4] Plaintiff also states, "All conversation was always 3rd party through the guards . . . ." [doc. # 1, p. 3]. He never "got too close to [the nurses] because pills were given through the hole in the wall called the 'bean hole.'" [doc. # 11, p, 1].

8

*Iqbal*, 556 U.S. at 678.[5]

Plaintiff does not, for instance, allege that some or all the nurses he describes ignored his requests for care, that he simply does not know which nurse did what, and that he requires discovery to uncover the nurses' identities and actions/omissions. Instead, to reiterate, he suggests that he does not know who delayed his medical care or why his requests were ignored. And he only describes the three nurses because they are the nurses he "saw," "dealt with," or "interacted with," which in effect suggests that the three nurses actually provided—not denied or delayed—medical care.[6] [doc. # 11, p. 1].

Of import, the undersigned does not recommend dismissal because Plaintiff fails to identify the three nurses. Uncovering their identities would not cure his failure to plausibly allege that they were personally involved in depriving him of constitutionally adequate medical care. *See Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a

---

[5] For similar reasons, Plaintiff does not plausibly plead deliberate indifference. *See Marshall v. Patel*, 317 F. App'x 395, 396 (5th Cir. 2009) (concluding that an *inexplicable* delay in receiving medication did not amount to deliberate indifference); *Garcia v. Fed. Bureau of Prisons*, 459 F. App'x 458, 459 (5th Cir. 2012) ("The fact of delay in itself is not sufficient to establish deliberate indifference. . . . [U]nexplained delays in dispensing medications constitute negligence at most."); *Broussard v. Nelson*, 503 F. App'x 259 (5th Cir. 2012) (holding, where the plaintiff alleged that a nurse failed to provide prescribed medication despite his repeated requests and failed to timely respond to his emergency call, that the plaintiff's "bare assertion" that the nurse delayed responding to his emergency call did not demonstrate deliberate indifference and did not "clearly evince" a "wanton disregard" for his medical needs); *Kelm v. Tigner*, 2020 WL 1490966, at *5 (W.D. La. Mar. 5, 2020), *report and recommendation adopted,* 2020 WL 1492548 (W.D. La. Mar. 26, 2020) ("Plaintiff simply alleges that 'nothing happened' after he requested care, which prompts the question, why did 'nothing' happen?").

[6] As above, Plaintiff lists several interactions with nurses during which he obtained some medical treatment: (a) he was given Tylenol; (b) a nurse briefly examined him and concluded that he had "no feet issues" and that his "glucose level was good"; (c) a nurse examined him and asked him why he waited so long to seek care; and (d) nurses examined him and then sent him to an emergency room.

plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm."); *Pierce v. Warden of Tarrant Cnty.*, 1 F.3d 1236 (5th Cir. 1993) (affirming that the plaintiff's claims "against the unknown defendants had no arguable basis in law or fact" because the "complaint [did] not specify any action or inaction by any unknown defendant.").

Finally, Plaintiff mentions that on his return to the correctional center, after his feet were wrapped and he was provided Tylenol at the hospital, no one provided additional medication, and a nurse declined to re-wrap his feet. [doc. # 11, p. 1]. He also claims that he was never able to see a physician to obtain periodic glucose checks. [doc. # 1, p. 3]. But again, he does not fault any of the three nurses.[7]

In sum, even assuming Plaintiff names Nursing Staff as unidentified nurses, the Court should dismiss Plaintiff's claims against them because he does not address how they were personally involved in depriving him of a constitutional right.

### 4. Conclusory Allegations

Plaintiff alleges that between the middle of December 2022 and the middle of February 2023, he had to consume and shower in brown water every day. [doc. # 1, p. 4]. He "started having headaches daily[.]" *Id.* It is unclear if Plaintiff is attempting to plead a conditions-of-confinement claim or if he is only presenting context/background concerning how his infections arose. If he is attempting to raise a claim, he does not identify a responsible defendant.

---

[7] Even if Plaintiff sufficiently faulted a nurse, he does not state a plausible claim because complaints of not receiving follow-up examinations do "not rise to the level of deliberate indifference." *Mathis v. Alexander*, 49 F.3d 728 (5th Cir. 1995); *see Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) ("[W]e have long held that the decision whether to provide additional treatment is a classic example of a matter for medical judgment, which fails to give rise to a deliberate-indifference claim.").

Next, Plaintiff names Madison Correctional Security Management as a defendant, but he does not set forth any allegations against this entity.

Accordingly, the Court should dismiss Madison Correctional Security Management and Plaintiff's ostensible conditions-of-confinement claim.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Shane Anthony Jones's claims be **DISMISSED WITH PREJUDICE** for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 8th day of July, 2024.

_____
Kayla Dye McClusky
United States Magistrate Judge